UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON


CIVIL ACTION NO. 09-427-GWU


KENNETH ALAN ROBERTS,                                          PLAINTIFF,


VS.                          **MEMORANDUM OPINION**


MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                    DEFENDANT.


**INTRODUCTION**

Kenneth Roberts brought this action to obtain judicial review of an unfavorable administrative decision on his applications for Disability Insurance Benefits (DIB) and for Supplemental Security Income (SSI). The case is before the court on cross-motions for summary judgment.

**APPLICABLE LAW**

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1.    Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2.    If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

3.      The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments).  If so, disability is conclusively presumed and benefits are awarded.

4.      At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

5.      If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir.

1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir.

1997).

Review of the Commissioner's decision is limited in scope to determining

whether the findings of fact made are supported by substantial evidence.  Jones v.

Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir.

1991).  This "substantial evidence" is "such evidence as a reasonable mind shall

accept as adequate to support a conclusion;" it is based on the record as a whole

and must take into account whatever in the record fairly detracts from its weight.

Garner, 745 F.2d at 387.

One of the issues with the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations.  Id.  Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform,

then an award of benefits may, under certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions  .  .  .  or heightened sensitivity to environmental

contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The Administrative Law Judge (ALJ) concluded that Roberts, a 53-year-old former autobody helper and construction worker with a "limited" education, suffered from impairments related to a history of low back pain, a history of dizziness, and being status post open reduction and internal fixation of a frontal sinus fracture. (Tr. 17, 21).  While the plaintiff was found to be unable to return to his past relevant work, the ALJ determined that he retained the residual functional capacity to perform a restricted range of light level work. (Tr. 19, 21).  Since the available work

was found to constitute a significant number of jobs in the national economy, the claimant could not be considered totally disabled.  (Tr. 21-22).  The ALJ based this decision, in large part, upon the testimony of a vocational expert.  (Tr. 22).

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence.  Therefore, the court must grant the defendant's summary judgment motion and deny that of the plaintiff.

The hypothetical question presented to Vocational Expert William Ellis included an exertional limitation to light level work, restricted from a full range by such non-exertional restrictions as (1) a need to avoid work at unprotected heights and around hazardous equipment or machinery; (2) an inability to more than occasionally climb; and (3) a need to avoid being in the "supine, lying down" position.  (Tr. 50).  In response, Ellis identified a significant number of jobs in the national economy which could still be performed.  (Tr. 51).  Therefore, assuming that the vocational factors considered by the expert fairly characterized Roberts's condition, then a finding of disabled status, within the meaning of the Social Security Act, is precluded.

The hypothetical question fairly characterized Roberts's condition as required by Varley.  Dr. Cassandra Comer (Tr. 201) and Dr. Timothy Gregg (Tr. 202) each reviewed the record and opined that it did not reveal the existence of a "severe" impairment.  The ALJ's findings were compatible with these opinions.

Dr. Martin Fritzhand examined Roberts and noted a diagnostic impression of chronic obstructive pulmonary disease, chronic low back pain, and a history of head trauma (with possible craniotomy) with persistent positional vertigo. (Tr. 196). Dr. Fritzhand indicated that he was unable to assess functional restrictions without at least lumbar spine x-rays, but speculated that the plaintiff would be able to perform a "moderate" amount of sitting, standing, ambulating, bending, pushing, pulling, lifting and carrying heavy objects.  (Id.).  These somewhat vague restrictions, while possibly suggesting more severe impairment in some areas than found by the ALJ, do not appear totally disabling.  Furthermore, they would not be binding on the administration since the limitations are speculative in nature. Therefore, this report does not support the plaintiff's claim of disabled status.

The record reveals that Roberts only sporadically sought medical care during the time period relevant to this appeal.[1]  Dr. Stephen Kiteck saw the plaintiff in September of 2006 for sinus congestion.  (Tr. 192).  Dr. Kiteck did not identify any functional limitations.  (Tr. 190-192).  The claimant was treated at Ephraim McDowell Hospital in June of 2008 for lumbar pain.  (Tr. 210-211).  Once again, functional limitations were not reported.  (Id.).  Neither of these reports supports Roberts's claim of disabled status.

_____

[1]The plaintiff alleged a disability onset date of July 1, 2004 on his applications for DIB and SSI.  (Tr. 102, 107).

The medical record prior to the relevant time period reveals that Roberts was seen at the University of Tennessee Memorial Hospital in July of 1995 with an anterior table fracture of the frontal sinus and a complex 6 cm. laceration involving the forehead.  (Tr. 174).  The plaintiff underwent open reduction with internal fixation of the anterior table fracture fo the frontal sinus and repair of the laceration.  (Id.).  The staff did not impose functional restrictions which would carry forward into the pertinent time period.  (Tr. 172-183).  Treatment notes from Dr. Craig Enlow dated between December, 1995 and June, 1999 revealed treatment for respiratory ailments such as bronchitis and chronic obstructive pulmonary disease and chest pain determined to be costochondritis. (Tr. 184-187).  The only functional limitation indicated was a need to quit smoking.  (Tr. 185).  Finally, the claimant was seen by Dr. Joseph James in February of 2003 who noted arthritis in the left hand and chronic obstructive pulmonary disease. (Tr. 189).  Again, functional limitations were not reported.  (Tr. 188-189).  Therefore, these reports do not indicate the existence of more severe functional limitations than those found by the ALJ.

Roberts argues that the ALJ erred by failing to consider the combination of his impairments.  However, the court has already determined that the hypothetical factors fairly characterized the plaintiff's condition.   Thus, the ALJ implicitly considered all of the claimant's impairments in combination.  The ALJ discussed the evidence and the plaintiff's allegations as required by Gooch v. Secretary of Health

and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).   The plaintiff has not indicated what impairments were not properly considered.   Therefore, the undersigned must reject the claimant's argument.

Roberts argues that the ALJ did not properly evaluate his subjective pain complaints.  Pain complaints are to be evaluated under the standards announced in Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986): there must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

In the present action, Roberts was found to be suffering from a potentially painful condition.  However, even if he could be found to have satisfied the first prong of the so-called Duncan test, the claimant does not meet either of the alternative second prongs.  Dr. Fritzhand noted that the plaintiff had good nutritional status and walked with a normal gait.  (Tr. 195).  The Romberg test was normal. (Id.).  Pulmonary function studies revealed mild to moderate obstruction.  (Tr. 20, 199).  However, the lungs were clear without rales, rhonchi, wheezes or cyanosis. (Tr. 20, 195).  The heart rate was regular with no gallop or murmur.  (Tr. 195). Range of motion studies were good.   (Id.).   Neurological examination was completely normal.  (Id.).  Muscle and grip strength were preserved over the upper

extremities.  (Id.).  There was no sign of muscle atrophy.  (Id.).  Spine curvature was normal.  (Tr. 196).  Dizziness was reported in the supine position.  (Tr. 196).  Dr. Kiteck reported that examination of the back was negative and the extremities and skin were unremarkable.  (Tr. 192).  Neurological examination revealed no abnormalities.  (Id.).  The Ephraim McDowell treatment records reveal that the plaintiff declined to have any x-rays or an MRI scan performed.  (Tr. 20, 211).  The claimant reported to the staff that he had injured his back doing heavy lifting while at work.  (Id.).  Thus, the medical evidence does not appear sufficient to confirm the severity of the alleged pain and objective medical evidence would not appear to be consistent with Roberts's claims of disabling pain.  Therefore, the ALJ would appear to have properly evaluated the plaintiff's pain complaints.

The undersigned concludes that the administrative decision should be affirmed.  A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 8th day of September, 2010.

**Signed By:**

**_G. Wix Unthank_**

**United States Senior Judge**